## WHERE NEGLIGENCE INTERVENED IN SEVERAL RESPECTS AND AN ACCIDENT OCCURRED.

Court of Appeals for Greene County.

IDA J. LARKINS, ADMINISTRATRIX, v. OHIO ELECTRIC RAILWAY COMPANY.

Decided, October 24, 1914.

*Negligence—Safe Place to Work—Failure of Employee to Use an Appliance Furnished Him—Does Not Absolve Employer from Liability Where Such Failure Was Only One of Several Causes Contributing to the Accident—Contributory Negligence May be Considered, Although Not Pleaded or Mentioned in the Charge of the Court— Damages Apportioned in Accordance with the Proprieties of the Case.*

1. The doctrine that where a servant was furnished a proper appliance and failed to make use of it the master is absolved from liability on account of resulting injury, is not applicable under the employers' liability act where back of the failure of the servant to use the appliance, there is negligence on the part of the master in failing to provide other safeguards and his negligence in that respect contributed to the injury.

2. The remedy for correcting an inadequate verdict by giving to the defendant in error the option of consenting to a proper increase as a condition of affirmance of the judgment, will be resorted to by a court of review only in extreme cases, and will not be resorted to in a case where the damages are speculative and were peculiarly in the province of the jury to determine.

3. Although not pleaded or commented upon in the charge of the court, contributory negligence may be considered under the employer's liability act where arising as an inference from the evidence of the plaintiff; and where the reduction in the amount of damages as fixed by the jury is within the proprieties of the case, the verdict will not be disturbed on the ground of inadequacy.

*Roy G. Fitzgerald* and *Amor P. Smith,* for plaintiff in error. *C. L. Darlington* and *Paul C. Martin,* contra.

ALLREAD, J.; FERNEDING, J., and KUNKLE, J., concur.

The original action was brought against the Ohio Electric Railway Company for wrongful death, and a verdict and judgment for $4,500 was obtained.

The railway company moved for a new trial upon the sole ground that the court erred in overruling its motion at the close of the plaintiff's evidence for a directed verdict.

The administratrix also moved to increase the amount of the verdict to $12,000 or to grant a new trial for gross inadequacy.

Both motions were overruled and both parties prosecute error to this court.

The cause of action arose under the employer's liability act of 1910 (Section 6242 G. C., et seq.).

This act was intended to broaden the liability of the employer, particularly in respect to maintaining safe conditions and to abolish the common law defenses of the negligence of fellow-servants and the assumptions of the risk and also to narrow the defense of contributory negligence.

The act emphasizes the duty of the employer to provide safe conditions where the workmen are employed and to charge the employer with knowledge of unsafe conditions.

The evidence of the plaintiff tends to show that one Isenberger, night foreman of the boiler room, was directed by his superior, the day foreman, to make certain changes or disconnections on top the heaters. To do this he was required to ascend by means of a temporary ladder.

Larkins, the decedent, was night engineer and had general supervision of the plant during the night hours. The day foreman who was also Larkins' superior gave the order for this special work to Isenberger, but Larkins by virtue of his general authority had a general oversight of the work.

When Isenberger attempted to make the changes ordered he was confronted with an unusual condition as to the exhaust of steam and the testimony of at least two witnesses tends to show that Isenberger requested Larkins to come up and see the conditions.

Other witnesses deny hearing this invitation. Upon a motion for a directed verdict, however, we are required, under the scintilla rule as established and affirmed in the recent case of *Gibbs* v. *Village of Girard,* 88 O. S., 34, to take the broadest reasonable inference from the plaintiff's testimony. The court is not

authorized upon such motion to weigh conflicting testimony. Independent, however, of an invitation by Isenberger, the responsibility of general oversight charged upon Larkins would justify him in an investigation upon his own motion. Larkins in the apparent line of his duty ascended the ladder and in attempting to get upon the top of the heaters fell and received injuries which caused his death.

The general ground of negligence charged was the failure to maintain safe conditions for the performance of this work. The evidence tends to show that the company had constructed a system of electric lights to illuminate this portion of the plant and that the same were at the time of the accident out of repair so that the place where this work was to be done was in darkness. The condition as developed in the evidence leaves a natural inference that light was reasonably essential to the safety of workmen engaged in the special service ordered in the case at bar. This inference is strengthened by the employer's act in establishing the light system. It would, therefore, follow as an inference capable of being drawn by the jury that the negligence of the company in allowing the light plant to become out of order contributed to the unsafe condition. There was also evidence tending to show that a wire had been stretched over the heaters in such a manner as to increase the difficulty of workmen getting thereon, and there is also evidence tending to show that a certain pipe maintained for other uses was allowed to become defective and easily broken. There is evidence tending to show that Larkins in attempting in the darkness to get past the wire onto the heaters caught hold of the defective pipe which gave away causing his fall.

We do not agree that the evidence tends to show that the defect in the pipe was the sole proximate cause of the injury. The unsafe conditions were rather a combination. If the place had been properly lighted, it would be a probable inference that Larkins would have been able to get upon the heaters in safety Such an inference might also be drawn if the wire had not been unnecessarily placed at this point. It was, therefore, a combination of the absence of light, the unnecessary placing of

the wire obstruction and the defect of the pipe which caused the unsafe condition.

It is contended that the company was not bound to furnish an elaborate lighting system for places rarely used by workmen and this contention, in a limited sense, may be sound. Still the testimony tends to show that repair work upon the heaters was not infrequent, but occurred at such intervals as would fairly make it the duty of the employer to make the place safe for workmen, and this would certainly be true where the workmen were specially ordered to do the work.

It is also contended that the master was not bound to make the pipe which the decedent caught hold of safe for the purposes of a hand hold. But in view of the other defective conditions we think it was a subject for consideration by the jury upon the issues as to whether the place into which workmen were specially ordered to go was safe.

It is contended that Larkins should have taken a torch which the evidence shows was provided for workmen and that if he had done so, the danger would probably have been obviated.

The evidence tends to show that Isenberger had taken a lighted torch and had it with him on top of the heater. There was evidence tending to show that there were other torches provided by the master but not used on this occasion. Witwer followed Isenberger to the top of the heater and following him was Larkins, neither of whom had torches.

It is contended that the furnishing of the torches exonerates the master and that the failure of the employees to use the torches was not merely contributory negligence to be considered in mitigation of damages, but constitutes an absolute defense.

What would have happened had Larkins taken a torch is of course problematical. We think the court is not called upon as a matter of law to solve this question; it is rather one to be considered by the jury.

It is probably true that where the master has furnished to the servant proper appliances to make his work safe and the servant fails to use such appliances, that the master would be absolved

from liability. This doctrine, however, rests upon the proposition that the master has performed his full duty by furnishing the servant ample means to make the place safe, and not upon the doctrine of contributory negligence. We think it was an inference capable of being drawn that torches are not a sufficient substitute for electric lights and that back of the failure of Larkins to use the torch, the negligence of the master as to maintaining the light plant in good order existed as a ground of negligence. The failure of Larkins to use the torch in ascending the ladder and getting upon the heaters with the other men was a matter of contributory negligence rather than a defense.

The employers' liability act was intended to abolish the assumption of the risk and contributory negligence defenses, and the courts ought not by narrow construction or subtlety of distinction to defeat the evident purpose of the Legislature and reinstate contributory negligence and assumption of the risk as available defenses in cases where the master has failed to maintain safe conditions.

Under the evidence we think that the failure of Larkins to carry a torch did not necessarily defeat the action, but was a question for the jury in mitigation of damages.

It is also contended that Larkins having control of the plant at the time of the accident was charged with a duty of keeping the electric lights and other portions of the premises in good repair and that this position of responsibility intercepts and supersedes the negligence of the master as the proximate cause. Under the evidence as we are bound to consider it on a motion for an instructed verdict, we think it is not a clear inference that the duty to make repairs to the electric light plant rested upon Larkins. He was only in charge of the plant at night as engineer. There is evidence in the record tending to show that the duty to repair the light plant rested upon the day foreman, and we are not bound to assume that the night foreman by mere inference was charged with the responsibility of such repair. To make this inference under the evidence of this case would be to revive the abolished doctrine of assumption of the risk by judicial construction.

We, therefore, hold that the evidence was sufficient to require the trial court to submit the case to the jury, and that the motion for an instructed verdict was properly overruled.

The administratrix contends that the verdict is too small and that the court should either increase the verdict or grant a new trial upon the ground that the amount is grossly inadequate. We may assume that a reviewing court in cases of gross inadequacy is authorized to grant a new trial or to give the defendant in error the option of agreeing to a proper increase as a condition of the affirmance of the judgment. It is conceded, however, that such remedy will be sparingly applied and only resorted to in extreme cases.

The case of *Light Company* v. *Mason*, 81 O. S., 463, was an extreme case. There the evidence demonstrated that up to the time of the trial the actual damages amounted to more than the verdict. The court was not, therefore, required to enter the realm of speculation.

In the present case the amount of actual damages is more or less speculative and falls within the province of the jury to determine. In cases where the damages are speculative, courts are reluctant to interfere with verdicts.

The court is quite willing to concede that it is difficult to harmonize the amount of the verdict with a reasonable and just determination of the entire damages arising from Larkin's death, but there are two propositions upon which we think this judgment should be sustained. In the first place we may assume from the evidence that the jury was somewhat in doubt upon the fundamental question of liability, and we think that the contention of counsel for defendant in error, based upon authorities cited by him, that such doubt may fairly influence the jury within a reasonable latitude in the fixing of the amount of recovery.

In the second place, contributory negligence may be considered under the employer's liability act in mitigation and reduction of the damages. It is true that in the present case contributory negligence was not pleaded, nor were the jury charged with reference thereto. Still, we think it is settled in this state

that where contributory negligence arises as an inference out of the plaintiff's evidence, it may be considered irrespective of a special plea. *Railroad Company* v. *Whattacre*, 35 O. S., 627; *Glass* v. *Heffron Co.*, 85 O. S., 70; *City of Cincinnati* v. *Trager*,

The reduction of the damages to $4,500 may fairly be reconciled upon the theory that the jury apportioned damages in accordance with the proprieties of the case without a plea or instruction. We are bound to sustain rather than overthrow a verdict, and in doing so, we are justified in adopting any reasonable inference in favor of the verdict. If the jury, therefore, reduced the amount of the damages to $4,500 upon the theory of equitable apportionment, they were acting within their legitimate province.

It, therefore, follows that the judgment of the court of common pleas should be affirmed.