NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 14-4158
_____

DAVID MUNCHINSKI

v.

GERALD SOLOMON, In His Official Capacity as District Attorney
of Fayette County, Pennsylvania and In His Individual Capacity;
RALPH WARMAN, In His Official Capacities as First Assistant
District Attorney and District Attorney of Fayette County, Pennsylvania
and In His Individual Capacity;
JOHN A. KOPAS, III, In His Official Capacity as First Assistant District Attorney
of Fayette County and His Individual Capacity;
DANA L. FAYOCK, Executrix of the Estate of George Fayock

GERALD SOLOMON;
RALPH WARMAN,
Appellants
_____

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA
(D.C. No. 2:13-cv-01280)
District Judge: Hon. David S. Cercone
_____

Submitted Under Third Circuit LAR 34.1(a)
July 16, 2015
_____

Before: SMITH, GREENAWAY, JR., and SHWARTZ, <u>Circuit Judges</u>.

(Filed: July 20, 2015)

_____

OPINION*

_____

SHWARTZ, <u>Circuit Judge</u>.

Following his release from prison, David Munchinski sued former Fayette County prosecutors Gerald Solomon and Ralph Warman (together, the "Prosecutors") under 42 U.S.C. § 1983, claiming that they violated his rights to due process and a fair trial by withholding material exculpatory evidence in connection with his murder convictions. The Prosecutors moved to dismiss, arguing that they are immune from suit. The District Court denied the motion. We will affirm.

I

A[1]

Munchinski and a co-defendant, Leon Scaglione, were charged with two murders in 1982 and tried jointly in 1983. The jury deadlocked, and Munchinski and Scaglione were retried separately in 1986. At Munchinski's retrial, the prosecution primarily relied on the testimony of Richard Bowen, who claimed to have observed Munchinski and Scaglione commit the murders. Munchinski was convicted and sentenced to two consecutive life terms.

_____

* This disposition is not an opinion of the full Court and, pursuant to I.O.P. 5.7, does not constitute binding precedent.
[1] Unless otherwise noted, these facts are drawn from <u>Munchinski v. Wilson</u>, 694 F.3d 308 (3d Cir. 2012).

In 1991, Bowen recanted his trial testimony, stating that he had not witnessed the murders but was coached by Solomon to say that he had. Based in part on this recantation, Munchinski filed a petition for relief in 1992 under the Pennsylvania Post-Conviction Relief Act ("PCRA"), 42 Pa. Cons. Stat. Ann. § 9541 et seq. At an evidentiary hearing, Bowen disavowed his recantation, and in 1993, Munchinski's PCRA petition was denied. He filed two subsequent PCRA petitions, in 2000 and 2001, that were also denied.

In 1998, Munchinski filed a petition for habeas relief under 28 U.S.C. § 2254. The District Court denied the petition and we affirmed. Munchinski v. Price, 254 F.3d 1078 (3d Cir. 2001). He filed a second habeas petition in 2007, alleging that the prosecution withheld material exculpatory evidence, including evidence that Bowen was not in Pennsylvania at the time of the murders. The District Court granted this petition, concluding that Munchinski had demonstrated that the prosecution "suppressed favorable evidence that was material to the determination of his guilt or innocence" and thus "deprived [him] of a constitutionally-adequate trial." Munchinski v. Wilson, 807 F. Supp. 2d 242, 290 (W.D. Pa. 2011). We affirmed and ordered the Commonwealth to release Munchinski or retry him. Munchinski v. Wilson, 694 F.3d 308, 339 (3d Cir. 2012). He was not retried and was released from prison in 2013.

3

B[2]

Munchinski sued the Prosecutors, among others, under 42 U.S.C. § 1983, claiming that they violated his constitutional rights to due process and a fair trial. He alleges that in September 1982, the Prosecutors tape-recorded an interview of Bowen during which Bowen denied any involvement in or knowledge of the murders, and that the Prosecutors "knowingly failed to preserve" the tape. App. 39 (Compl. ¶ 24).

According to Munchinski, Bowen provided a second statement to the Prosecutors roughly one month later in which Bowen claimed, "for the first time," to have witnessed the crimes. App. 40 (Compl. ¶ 25). Shortly thereafter, Munchinski was arrested and charged. Munchinski alleges that, based on Bowen's contradictory statements, the Prosecutors could not have reasonably believed that there was probable cause to arrest and charge him.

Munchinski also alleges that he was wrongfully convicted in 1986 because the Prosecutors failed to disclose material exculpatory evidence after the 1983 mistrial. He further alleges that, during the first PCRA proceeding, Warman and another prosecutor were ordered to produce for the PCRA court's in camera review the "complete and entire" Pennsylvania State Police investigation file, but failed to do so, and thereby withheld material exculpatory evidence. App. 44 (Compl. ¶ 44). Munchinski maintains that Warman continued to unlawfully withhold this evidence through the denial of his

---

[2] The facts for this section are drawn from the Amended Complaint. In accordance with our standard of review, we assume that they are true.

first habeas petition in 2001.

The Prosecutors moved to dismiss the Amended Complaint under Fed. R. Civ. P.

12(b)(6), arguing, among other things, that they are entitled to absolute and Eleventh

Amendment immunity. The District Court denied the motion. The Prosecutors appeal.

II[3]

A

We first address whether the Prosecutors are entitled to absolute immunity. As a

general matter, "state prosecutors are absolutely immune from liability under § 1983 for

actions performed in a [judicial or] quasi-judicial role." Yarris v. Cnty. of Del., 465 F.3d

129, 135 (3d Cir. 2006). "This immunity extends to acts that are 'intimately associated

---

[3] The District Court had jurisdiction under 28 U.S.C. §§ 1331 and 1343. We have jurisdiction to review the District Court's denial of absolute and Eleventh Amendment immunity under the collateral-order doctrine to the extent it turns on issues of law. Dotzel v. Ashbridge, 438 F.3d 320, 323-24 (3d Cir. 2006); P.R. Aqueduct & Sewer Auth. v. Metcalf & Eddy, Inc., 506 U.S. 139, 147 (1993).

We exercise plenary review over the District Court's denial of absolute immunity, Kulwicki v. Dawson, 969 F.2d 1454, 1461 (3d Cir. 1992), and Eleventh Amendment immunity, Haybarger v. Lawrence Cnty. Adult Probation & Parole, 551 F.3d 193, 197 (3d Cir. 2008). Because the District Court ruled on the Prosecutors' immunity arguments in the context of denying their motion to dismiss under Fed. R. Civ. P. 12(b)(6), "[w]e apply the same standard that district courts apply at the motion-to-dismiss stage." Yarris v. Cnty. of Del., 465 F.3d 129, 134 (3d Cir. 2006). Thus, we are "concerned with neither the accuracy of the facts alleged nor the merits of [Munchinski's] underlying claims." Id. Rather, we must construe the facts alleged in the Amended Complaint in the manner most favorable to Munchinski to determine whether the Prosecutors are entitled to immunity for any claims based on their alleged misconduct. Id.; see also Kulwicki, 969 F.2d at 1462-63. We may also consider "any matters incorporated by reference or integral to the claim, items subject to judicial notice, [and] matters of public record." Buck v. Hampton Twp. Sch. Dist., 452 F.3d 256, 260 (3d Cir. 2006) (internal quotation marks omitted).

5

with the judicial phase of the criminal process,'" id. (quoting Imbler v. Pachtman, 424 U.S. 409, 430-31 (1976)), but does not encompass "[a] prosecutor's administrative duties and those investigatory functions that do not relate to an advocate's preparation for the initiation of a prosecution or for judicial proceedings," Buckley v. Fitzsimmons, 509 U.S. 259, 273 (1993). "Ultimately, whether a prosecutor is entitled to absolute immunity depends on whether she establishes that she was functioning as the state's 'advocate' while engaging in the alleged conduct that gives rise to the constitutional violation." Yarris, 465 F.3d at 136 (quoting Buckley, 509 U.S. at 274).

To determine whether the Prosecutors are entitled to absolute immunity, we must examine each of the five acts of misconduct alleged in the Amended Complaint and discern whether the Prosecutors were acting in a judicial or quasi-judicial role, or were instead performing administrative or investigatory functions. See Wilson v. Rackmill, 878 F.2d 772, 775-76 (3d Cir. 1989). At the 12(b)(6) stage, the Prosecutors must establish that "the allegations of [Munchinski's Amended Complaint] . . . indicate the existence of absolute immunity as an affirmative defense; the defense must clearly appear on the face of the [Amended Complaint]." Id. at 776; Light v. Haws, 472 F.3d 74, 78 (3d Cir. 2007). We address each allegation of misconduct in turn.

1.    The Interview Tape

Munchinski alleges that the Prosecutors "knowingly failed to preserve" the tape of

Bowen's initial interview.[4]  App. 39 (Compl. ¶ 24).  While Munchinski fails to specify

when this knowing failure to preserve the interview tape occurred, he makes this

assertion in the context of describing the interview itself, which took place in September

of 1982.  At that time, Munchinski had yet to be arrested or charged.  This suggests that,

in interviewing Bowen, the Prosecutors had adopted "the detective's role in searching for

the clues and corroboration that might give [them] probable cause to recommend that a

suspect be arrested," and were thus performing an investigatory rather than a

prosecutorial function.  Buckley, 509 U.S. at 273.  To the extent that their alleged failure

to preserve the tape occurred in this context, they are not entitled to absolute immunity.[5]

Id. ("When a prosecutor performs the investigative functions normally performed by a

detective or police officer, it is neither appropriate nor justifiable that, for the same act,

immunity should protect the one and not the other." (internal quotation marks omitted)).

Therefore, the Prosecutors' motion to dismiss was properly denied in this respect.

2.      The Charging Decision

Munchinski alleges that the Prosecutors ignored Bowen's inconsistent interview

statements and thus could not have reasonably believed there was probable cause to arrest

---

[4] The District Court inaccurately characterized the allegation as asserting that the Prosecutors destroyed the tape.

[5] To the extent Munchinski intended to allege that the Prosecutors knowingly failed to preserve the tape in some other context, we note there are circumstances in which prosecutors are not absolutely immune for knowingly failing to preserve exculpatory evidence, see Henderson v. Fisher, 631 F.2d 1115, 1120 (3d Cir. 1980), but we need not issue a sweeping denial of absolute immunity beyond the allegations as we understand them.

7

and charge him. The arrest of a criminal defendant and the filing of charges are at the core of the prosecutorial function, and "[a] prosecutor is absolutely immune when making [the decision to initiate a prosecution], even where he acts without a good faith belief that any wrongdoing has occurred." Kulwicki v. Dawson, 969 F.2d 1454, 1464 (3d Cir. 1992). Accordingly, the Prosecutors are entitled to absolute immunity for this conduct. Id.; see also Kalina v. Fletcher, 522 U.S. 118, 129 (1997) (holding that a prosecutor's filing of an arrest warrant and charging documents are protected by absolute immunity).

3.      Disclosures after the 1983 Mistrial

Munchinski alleges that the Prosecutors withheld material exculpatory evidence after his mistrial in 1983 through his retrial and conviction in 1986. As a general matter, prosecutors are "entitled to absolute immunity from claims based on their failure to disclose exculpatory evidence" before and during trial. Yarris, 465 F.3d at 137. Such immunity does not, however, extend to periods of "judicial inactivity." Odd v. Malone, 538 F.3d 202, 213-14 (3d Cir. 2008) (no absolute immunity for alleged prosecutorial misconduct during a four month continuance). With respect to the lengthy period between Munchinski's April 1983 mistrial and his November 1986 retrial, we are unable to determine from the Amended Complaint what transpired, and thus whether the Prosecutors "remained 'intimately associated with [the case's] judicial phase,'" entitling them to absolute immunity, id. (quoting Imbler, 424 U.S. at 430), or assumed a more

8

administrative role, in which case absolute immunity would not attach. Because the immunity defense must be apparent from the face of the complaint, Wilson, 878 F.2d at 776, we cannot conclude at this stage that the Prosecutors are entitled to absolute immunity for this conduct.[6]

### 4. Disclosures during the First PCRA Proceeding

Munchinski also alleges that, during the first PCRA proceeding, Warman withheld material exculpatory evidence by failing to produce the "complete and entire" Pennsylvania State Police investigation file for the PCRA court's in camera review, as ordered. App. 44 (Compl. ¶ 44). As discussed supra, prosecutors are generally absolutely immune for failing to disclose exculpatory evidence before and during trial. Yarris, 465 F.3d at 137-38. To demonstrate entitlement to absolute immunity "[a]fter a conviction is obtained," a prosecutor must show that the alleged misconduct was "part of [his] continuing personal involvement as the state's advocate in adversarial post-conviction proceedings." Id. at 137.

Warman directs us to public court records showing that he drafted the answer to Munchinski's petition and brief in opposition to Munchinski's motion for summary relief, and that he participated in hearings. These records, of which we take judicial notice, see In re Indian Palms Assocs., Ltd., 61 F.3d 197, 205-06 (3d Cir. 1995), make clear that he

---

[6] In 1983, the prosecutors were ordered to furnish "all of the evidence" for Munchinski's inspection, App. 76. Because we lack facts about the order, we will not decide whether the Prosecutors' alleged failure to comply with a 1983 trial court order independently precludes the application of absolute immunity. See Odd, 538 F.3d at 214.

9

was personally involved in the first PCRA proceeding as an advocate such that absolute immunity would seem to apply to his failure to disclose exculpatory evidence in connection with that proceeding. See Yarris, 465 F.3d at 137-38. However, there are "few circumstances under which we would consider the act of disobeying a court order or directive to be advocative," and "we are loath to grant a prosecutor absolute immunity for such disobedience," Odd, 538 F.3d at 214, particularly where the order allegedly violated leaves the prosecutor with little more than "a ministerial function to perform," Reid v. State of N.H., 56 F.3d 332, 336-38 (1st Cir. 1995).

Here, the PCRA court ordered Warman to produce "[t]he entire Pensylvania State Police investigation file" for its review. App. 80. Munchinski alleges that Warman failed to do so. Insofar as the PCRA court's order did not require Warman to exercise any discretion to determine if an item was covered by the order, the order did not require the exercise of a prosecutorial function. Cf. Reid, 56 F.3d at 336-38 (holding that prosecutors were absolutely immune for withholding exculpatory evidence in violation of a court order because the order was issued in response to a defense motion for "any 'exculpatory' evidence," and thus required the prosecutors to make judgments). Accordingly, Warman is not entitled to absolute immunity at this stage based on his alleged violation of the PCRA court's order and resulting failure to produce material exculpatory evidence. The District Court therefore correctly denied immunity at this stage for this conduct.

5.      Disclosures after the First PCRA Proceeding

Lastly, Munchinski alleges that, following the first PCRA proceeding, Warman "continued, post trial, to unlawfully withhold [material] exculpatory evidence" through the denial of Munchinski's first habeas petition in 2001.  App. 46 (Compl. ¶ 52).  While the Amended Complaint makes clear that Munchinski continued to collaterally attack his conviction after the denial of his first PCRA petition, it does not allege that Warman was asked to take any action in connection with or was involved in those proceedings.  The Amended Complaint alleges only that Warman "unlawfully" withheld exculpatory evidence between roughly 1993 and 2001.  App. 46 (Compl. ¶ 52).   Because the Amended Complaint does not allege that Warman was involved in subsequent collateral attack proceedings, it is not apparent from its face whether he is entitled to absolute immunity for the alleged misconduct following the first PCRA proceeding.  Thus, the motion to dismiss on immunity grounds based on this allegation was properly denied.

B

We next address whether the Prosecutors are entitled to Eleventh Amendment immunity.  The Eleventh Amendment "immunize[s] an unconsenting state from suits brought in federal courts by her own citizens as well as by citizens of another state." Fitchik v. N.J. Transit Rail Ops., Inc., 873 F.2d 655, 658-59 (3d Cir. 1989) (internal quotation marks omitted).  A suit brought against an actor that is in essence "an arm of the state" is similarly barred by the Eleventh Amendment.  Id. at 658.  The Eleventh

11

Amendment does not, however, bar suits against officials in their individual capacities, even if the actions that are the subject of the suit were part of the officials' governmental duties. Hafer v. Melo, 502 U.S. 21, 30-31 (1991). Since Munchinski has sued the Prosecutors in their individual capacities, Eleventh Amendment immunity does not apply.

Moreover, even without considering the individual capacity allegation, the Amended Complaint does not demonstrate that the Prosecutors are entitled to Eleventh Amendment immunity at this stage. To determine whether an actor is entitled to Eleventh Amendment immunity, we consider: "(1) the source of funding—i.e., whether payment of any judgment would come from the state's treasury, (2) the status of the agency/individual under state law, and (3) the degree of autonomy from state regulation." Carter v. City of Phila., 181 F.3d 339, 347 (3d Cir. 1999). Applying these factors requires "a fact-intensive review that calls for individualized determinations." Bowers v. NCAA, 475 F.3d 524, 546 (3d Cir. 2007). We treat Eleventh Amendment immunity as an affirmative defense, and "the party asserting [it] bears the burden of proving entitlement to it." Christy v. Pa. Tpk. Comm'n, 54 F.3d 1140, 1144 (3d Cir. 1995).

From the pleadings, we cannot conclude that the Prosecutors are entitled to Eleventh Amendment immunity. With respect to the first factor, even if the Commonwealth would be required to pay for any judgment Munchinski might obtain, this alone is insufficient to grant Eleventh Amendment immunity. Furthermore, "Pennsylvania's Constitution expressly defines District Attorneys as county rather than

12

state officers." Carter, 181 F.3d at 349 (emphasis omitted).  While we do not rule out the possibility that the Prosecutors may be able to adduce facts at some later stage in the proceedings showing that they are entitled to sovereign immunity notwithstanding this fact, see id. at 352-53 (recognizing that the possibility that Pennsylvania District Attorneys could be considered state actors to the extent that they are enforcing state law and performing other purely prosecutorial duties), such entitlement is not evident on the record before us.  Accordingly, we will affirm the District Court's denial of Eleventh Amendment immunity.

III

For the foregoing reasons, we will affirm the order of the District Court denying the motion to dismiss based on absolute and Eleventh Amendment immunity other than with respect to the conduct associated with the charging decision, for which the Prosecutors are absolutely immune.