IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs January 6, 2004

## STATE OF TENNESSEE  v.  RICKY GROVER AARON

**Appeal from the Criminal Court for Davidson County
No. 99-D-2360    Walter Kurtz, Judge**

**No. M2002-02288-CCA-R3-CD - Filed December 13, 2004**

THOMAS T. WOODALL, J., concurring.

I concur with Judge Smith's lead opinion; however, I am writing separately for two reasons. First, I have reconsidered, and upon further reflection, retreat from my earlier position that sentences found to be in violation of *Blakely* should be remanded for a new sentencing hearing in the trial court. Until such time as there is clear authority for our courts to deal with *Blakely* issues, whether by case law or by statute, judicial economy and sentencing considerations, including uniformity of application of sentencing factors, dictates that most sentences found to be in violation of *Blakely* should be modified, if at all, by the appellate courts. Clearly, the appellate courts have been given the authority to do so by the legislature. Tenn. Code Ann. § 40-35-401(c).

Second, I want to express my concern and reservations of the waiver assertions argued by the State and adopted by my esteemed colleague, Judge Hayes. Pre-*Blakely*, the status of the law in Tennessee as established by our supreme court's opinion in *Graham v. State*, 90 S.W.3d, 687 (Tenn. 2002), is clearly set forth in Judge Smith's opinion.

In the case *sub judice* (and in virtually every other case on direct appeal dealing with the "*Blakely* issue") the State asserts that "this issue is now waived for consideration in this case since the defendant could have previously raised the issue under *Apprendi*, just as Mr. Blakely did, in the trial court and on appeal to this Court in his appellate briefs." Assuming that Mr. Aaron in this case had argued in the trial court, under *Apprendi*, that no enhancement factor other than prior convictions could be applied absent a jury finding, the trial court, and this Court (prior to the U.S. Supreme Court's opinion in *Blakely*) would have been obligated to reject that issue under *Graham*. In *Holder v. Tennessee Judicial Selection*, 937 S.W.2d 877 (Tenn. 1996), our supreme court stated:

> We observe, however, that trial courts must follow the directives of superior courts, particularly when the superior court has given definite expression to its views in a case after careful consideration. [citations omitted]. Accordingly, **inferior courts** are not free to disregard, on the basis that the statement is *obiter dictum*, the pronouncement of a superior court when it speaks directly on the matter before it, particularly when the superior court seeks to give guidance to the bench and bar. To do otherwise invites chaos into the system of justice.

*Holder*, 937 S.W.2d at 881-82.  (Emphasis in bold type added).

Furthermore, it is necessary to note that the focal point of *Blakely* is the constitutional right to jury trial, and not the strength of evidence of enhancement factors, other than that the proof must be established beyond a reasonable doubt. There is no clear statutory authority in Tennessee for a jury to determine the applicability of any enhancement factor. Therefore, if Mr. Aaron had prevailed in raising the *Apprendi* issue in the trial court and/or on appeal, surely the remedy would not have been to still have the trial court determine the existence of an enhancement factor, subject to the hypothetical determination of whether a non-existent jury would have also found the same enhancement factor beyond a reasonable doubt. The majority opinion in *Blakely* closed with the following statement:

> The Framers would not have thought it too much to demand that, before depriving a man of three more years of his liberty, the State should suffer the modest inconvenience of submitting its accusation to "the unanimous suffrage of twelve of his equals and neighbors," 4 Blackstone, Commentaries, at 343, rather than a lone employee of the State.

*Blakely*, 124 S.Ct. at 2543.

The conclusion that *Blakely* errors in Tennessee are rarely, if ever, harmless error beyond a reasonable doubt, is supported by case law.

In *Sullivan v. Louisiana*, 508 U.S. 275, 113 S.Ct. 2078, 124 L. Ed. 2d 182 (1993), the issue was whether a "constitutionally deficient reasonable-doubt instruction may be harmless error." The State conceded that the "reasonable doubt" instruction given by the trial court in this first degree murder case was essentially identical to the same instruction held unconstitutional in *Cage v. Louisiana*, 498 U.S. 39, 111 S.Ct. 328, 112 L. Ed. 2d. 339 (1990) (per curiam). The Supreme Court of Louisiana held that the erroneous instruction in *Sullivan* was harmless beyond a reasonable doubt, and upheld the conviction. The United States Supreme Court thereafter granted certiorari. The Supreme Court held that the constitutionally deficient instruction could not be harmless error. The following quote from *Sullivan* is particularly pertinent to the situation in the case *sub judice*, where no jury in Tennessee has ever made (and under present statutory procedure arguably could never make) the factual determination that an enhancement factor(s) exists:

> Consistent with the jury-trial guarantee, the question [*Chapman v. California*, 386 U.S. 18, 87 S.Ct. 824, 17 L. Ed. 2d 705 (1967)] instructs the reviewing court to consider is not what effect the constitutional error might generally be expected to have upon a reasonable jury, but rather what effect it had upon the guilty verdict in the case at hand. See *Chapman, supra*, 386 U.S., at 24, 87 S.Ct., at 828 (analyzing effect of error on "verdict obtained"). Harmless-error review looks, we have said, to the basis on which "the jury *actually rested* its verdict." *Yates v. Evatt*, 500 U.S. 391, 404, 111 S.Ct. 1884, 1893, 114 L.Ed.2d 432 (1991) (emphasis added). The inquiry, in other words, is not whether, in a trial that occurred without the error, a guilty verdict would surely have been rendered, but whether the guilty verdict actually

rendered in *this* trial was surely unattributable to the error. That must be so, because to hypothesize a guilty verdict that was never in fact rendered--no matter how inescapable the findings to support that verdict might be--would violate the jury-trial guarantee. See *Rose v. Clark*, 478 U.S. 570, 578, 106 S.Ct. 3101, 3105, 92 L.Ed.2d 460 (1986); *id.*, at 593, 106 S.Ct., at 3114 (BLACKMUN, J., dissenting); *Pope v. Illinois*, 481 U.S. 497, 509- 510, 107 S.Ct. 1918, 1926, 95 L.Ed.2d 439 (1987) (STEVENS, J., dissenting).

Once the proper role of an appellate court engaged in the *Chapman* inquiry is understood, the illogic of harmless-error review in the present case becomes evident. **Since, for the reasons described above, there has been no jury verdict within the meaning of the Sixth Amendment, the entire premise of *Chapman* review is simply absent.** There being no jury verdict of guilty-beyond-a-reasonable-doubt, the question whether the *same* verdict of guilty-beyond-a-reasonable-doubt would have been rendered absent the constitutional error is utterly meaningless. There is no *object*, so to speak, upon which harmless-error scrutiny can operate. **The most an appellate court can conclude is that a jury *would surely have found* petitioner guilty beyond a reasonable doubt--not that the jury's actual finding of guilty beyond a reasonable doubt *would surely not have been different* absent the constitutional error**. That is not enough. See *Yates, supra*, 500 U.S., at 413-414, 111 S.Ct., at 1898 (SCALIA, J., concurring in part and concurring in judgment). **The Sixth Amendment requires more than appellate speculation about a hypothetical jury's action, or else directed verdicts for the State would be sustainable on appeal**; it requires an actual jury finding of guilty. See *Bollenback v. United States*, 326 U.S. 607, 614, 66 S.Ct. 402, 405, 90 L.Ed. 350 (1946).

*Sullivan v. Louisiana*, 508 U.S. at 279-80, 113 S.Ct. at 2081-82. (Emphasis in bold type added).

In summary, we are obligated to follow precedent clearly set forth by the Tennessee Supreme Court, *Holder*, except where the holding of the Tennessee Supreme Court is in direct contravention of a holding by the United States Supreme Court concerning a right under the United States Constitution. *See Terry v. State*, 46 S.W.3d 147, 160 (Tenn. 2001); *State v. Carruthers*, 35 S.W.3d 516, 561 n. 45 (Tenn. 2000) (the Tennessee Supreme Court is not bound by any federal court decisions other than those of the United States Supreme Court.)

The appellant in the case *sub judice* raised the *Apprendi* issue in a very timely manner after the *Blakely* decision was filed. The issue, therefore, should not be considered waived. To conclude that, if error, it was harmless error beyond a reasonable doubt, requires accepting that a hypothetical jury, which would have no clear statutory authority to determine anything more than guilt or innocence, would have found the enhancement factors beyond a reasonable doubt. In other words, the State argues that even if Defendant had not "waived" the issue and had been clairvoyant enough to see how the *Blakely* decision would be decided before it was filed, he would be denied any remedy

because the State of Tennessee had not provided the remedy:  a procedure for jury determination of the existence of enhancement factors.

Respectfully, in light of *Sullivan v. Louisiana*, I am unable to accept this logic.

_____
THOMAS T. WOODALL, JUDGE