Filed 6/10/15  P. v. Avila CA3

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Sacramento)

----

| | |
|---|---|
| THE PEOPLE, | C072432 |
| Plaintiff and Respondent, | (Super. Ct. No. 12F04132) |
| v. | |
| ALEXANDER AVILA, | |
| Defendant and Appellant. | |

Defendant Alexander Avila appeals from a judgment of conviction following a jury trial.  Defendant, a convicted sex offender, failed to register his true residential address after his release from custody.  Instead, for the second time, he falsely registered an address where he was not residing.  He was charged with failing to register his new address within five working days of change of address.  (Pen. Code, § 290.018, subd. (b).[1])  The prosecution also alleged that defendant suffered four prior serious felony

_____

[1] Undesignated statutory references are to the Penal Code in effect at the time of the charged offenses.

convictions under section 288, subdivisions (a) and (b). (§§ 667, subds. (b)-(i), 1170.12.) A jury found defendant guilty and defendant admitted the single serious felony conviction allegation upon which the prosecution proceeded. The court sentenced defendant to six years in prison.

On appeal, defendant contends that the trial court prejudicially erred in modifying the CALCRIM No. 3404 instruction. He contends the modification altered the prosecution's burden of proof.

We conclude the trial court erred, but the error is harmless. We affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

### The Prosecution's Evidence

The parties stipulated that defendant previously suffered convictions for felony sex offenses on October 4, 1984, and October 19, 1993, which require him to register his residence with law enforcement for the rest of his life pursuant to section 290.

On May 29, 2012, defendant registered at the office of the Sacramento County Sheriff's Department Sexual Assault Felony Enforcement ("SAFE") Team. Detective John Foster described the procedural requirements of sex offender registration, explaining that registrants must initial and sign the registration form to acknowledge that they have read and understand the requirements. He further explained that registrants must provide their address of residence or register as transient.[2] The term "residence" was defined on the form presented to defendant as follows: "one or more addresses at which a person regularly resides, regardless of the number of days or nights spent there, such as a shelter or structure that can be located by a street address, including but not limited to houses, apartment buildings, motels, hotels, homeless shelters, recreational vehicles, and other vehicles." On May 29, defendant listed 4619 Ringneck Court,

---

[2] Transient sex offenders are required to register every 30 days. (§ 290.011, subd. (a).)

2

Sacramento on the registration form as his residence (the "Ringneck address"). He also provided an address he frequented, 9233 Earl Fife Drive, Elk Grove, and an employment address, 7039 Kilkenny Court, Sacramento (the "Kilkenny address").

Detective Foster testified that his investigation began on June 12, 2012, after probation officers did a compliance check at defendant's registered residence, the Ringneck address, and found that he was not living there. Detective Foster and Deputy Dennis Peyton went to the Ringneck address the following day and spoke to a resident at that address, Joeandrea Rushin, who confirmed defendant did not live there. Defendant's probation officer informed Detective Foster that defendant could be residing at the Kilkenny address.

On June 14, 2012, Detective Foster and Deputy Peyton went to the Kilkenny address and found defendant there. Jimmy Durham, the owner of the residence at that address, told them that defendant had been living there for nearly four weeks. Deputy Peyton asked defendant whether he was aware that they were looking for him, and defendant replied, "[Y]es." They then arrested defendant.

Durham testified that he and defendant were members of the same congregation of Jehovah's Witnesses. He indicated that in May 2012, one of the elders of their church approached him about defendant needing a place to stay after his release from custody. Durham explained that he understood that defendant would only need to stay with him for "two or three days" until defendant could make more permanent living arrangements. However, defendant stayed with Durham at the Kilkenny address for nearly four weeks. Durham "would question [defendant] from time to time as to what avenues he was approaching about finding a place of his own" and reminded defendant that his agreement was only for a couple days. At one point, defendant asked if he could live there and pay him $300 per month in rent. Durham told defendant that he did not want defendant to live in his home on a long-term basis. Durham offered defendant some money to clear out flowerbeds around his house because he knew defendant needed

3

money. However, defendant did not complete the project and Durham testified that this was not a "form of employment."

Flordelisa Liriano, defendant's former mother-in-law and homeowner of the Ringneck residence, testified that defendant never lived at the Ringneck address following his release. She further testified that defendant knew he could not live with her because both her and her roommate, Joeandrea Rushin, are Jehovah's Witnesses and under their religious doctrine, they could not live with a man who is not their brother or husband. Rushin testified that defendant had not lived at the Ringneck address at any time since she had moved in, which was in April or May 2011.

Dinorah Torza, defendant's former wife and Liriano's daughter, testified that following defendant's arrest, he asked her to help him make it look like he was living at the Ringneck address. She said that she agreed to help him by putting his clothing in Liriano's home and telling the defense investigator that defendant was living there.

This was not the first occasion when defendant registered the Ringneck address as his place of residence. The trial court took judicial notice of a prior case in which defendant pleaded no contest in May 2011 to failing to properly register as a sex offender in violation of section 290.018, subdivision (b). Defendant had registered on February 2, 2011, listing the Ringneck address as his residence. However, Torza testified that at that time, defendant was living with her at 8020 Walerga Road (the "Walerga address"). She testified that defendant continued living there with her even after she filed for divorce because it was difficult for her to "get rid of this person." On May 4, 2011, she called the sheriff's department to assist her in removing defendant from her home.

Deputy Aaron Haydel responded to Torza's call. Deputy Haydel testified that Torza informed him that defendant was a registered sex offender but was not registered to the Walerga address. Defendant admitted to Deputy Haydel that he was a sex offender and his registered residence was the Ringneck address. Defendant told Deputy Haydel

that he "periodically stayed at the Walerga address, but he usually went back to the Ringneck address." Deputy Haydel arrested defendant for failing to register.

Defendant ultimately pleaded no contest for failing to properly register as a sex offender for the first time he falsely listed the Ringneck address as his place of residence.

Prior to his first section 290 violation, defendant had had significant registration experience, first registering as transient on April 14, 2010, and then registering as transient approximately every 30 days through January 18, 2011, for a total of 11 registrations. However, even those registrations were false. Torza testified that defendant had been living with her at her house on Legacy Court from April 2010 until he moved with her to the Walerga Road address on January 1, 2011. It was on February 2, 2011, while defendant was still living with Torza, that he changed his registration from transient to the Ringneck address as his place of residence.

### Defense Evidence

Defendant, representing himself at trial, did not testify in his own defense. However, he presented the testimony of Amani Jones, his probation officer. Jones testified that when defendant registered, he listed Liriano and Rushin as the occupants of the Ringneck address and the total number of occupants as "[t]wo." However, Jones explained that because not everyone enters the total number of occupants correctly, the probation department "go[es] off of" the address listed as the registrant's residence. Additionally, on cross-examination, Jones testified that she clarifies with each registrant individually that the registrant actually resides at the listed residence address.

Defendant recalled Torza, and she testified that she sold the vehicle defendant had been driving while he was in custody on the 2011 offense. She did not know whether defendant had obtained any other vehicles thereafter. However, she did see him on June 11, 2012, right after he got out of jail. He was waiting for her in a residential area in downtown Sacramento where he knew she parked her car while she was at work. In his

5

closing argument, defendant contended Torza's testimony showed he had no vehicles and that he had difficulty getting around.

## Verdict and Sentencing

The jury found defendant guilty. The prior conviction allegations were bifurcated. The prosecution proceeded with only one of the alleged prior strike convictions, a 1984 conviction of committing a lewd act upon a child in violation of section 288, subdivision (a). Defendant admitted the prior conviction.

The trial court denied defendant's motion for a new trial and sentenced defendant to six years in prison calculated as follows: the upper term of three years for failing to register, doubled because of the prior strike conviction.

## DISCUSSION

### I.  Additional Background and Defendant's Instructional Error Contentions

In order to prove that defendant violated section 290.018, subdivision (b), the prosecution had the burden of showing that defendant knew he had a duty to register and that he "willfully" failed to register as required.

During the instruction conference, defendant requested that the court further instruct the jury that a failure to register is not "willful" when it is "the result of misinformation or lack of transportation." Defendant contended this would be a proper instruction under *People v. Johnson* (1998) 67 Cal.App.4th 67, 73 ["The instructions given by the trial court permitted the jury to find that defendant's failure to register was not willful, but rather the result of misinformation and lack of transportation."].

The court granted defendant's request and drafted a modification, adding the following as a second paragraph to CALCRIM No. 3404:  "you *may* find the defendant not guilty if you find that the defendant's failure to register [the Kilkenny address] as a

6

residence was not intentional, but rather the result of misinformation or lack of transportation."[3]  (Italics added.)  Defendant agreed to the proposed instruction.

On appeal, defendant contends that the court prejudicially altered the prosecution's burden of proof "by requiring the jury to 'find' either misinformation or lack of transportation before it 'may' find [defendant] not guilty."  Defendant contends that "a proper instruction would have informed the jury that it must acquit [defendant] if it had a reasonable doubt as to whether he failed to register as a result of misinformation or lack of transportation.  The court's modified instruction altered the burden of proof in violation of [defendant's] rights to equal protection and due process rights guaranteed to him under the Fifth and Fourteenth Amendments."  We agree that the instruction was potentially confusing, but we conclude that any error was harmless.

## II.  Analysis

### A.  Modified Instruction CALCRIM No. 3404

"The trial court is charged with instructing upon every theory of the case supported by substantial evidence, including defenses that are not inconsistent with the defendant's theory of the case."  (*People v. Montoya* (1994) 7 Cal.4th 1027, 1047.)  "The trial court must instruct even without request on the general principles of law relevant to and governing the case.  [Citation.]  That obligation includes instructions on all of the elements of a charged offense.  [Citation.]"  (*People v. Cummings* (1993) 4 Cal.4th 1233,

---

[3]  With the trial court's second paragraph added to the standard CALCRIM No. 3404, the instruction read:  "The defendant is not guilty of Count 1, Failing to Register as a Sex offender if he acted without the mental state required for that crime, but acted instead accidentally.  You may not find the defendant guilty unless you are convinced beyond a reasonable doubt that he acted with the required mental state.  [¶]  Further, you *may* find the defendant not guilty if you find that the defendant's failure to register 7039 Kilkenny Drive, Sacramento, CA 95842 as a residence was not intentional, but rather the result of misinformation or lack of transportation."  (Italics added.)

1311.)  We review de novo whether jury instructions correctly state the law.  (*People v. Posey* (2004) 32 Cal.4th 193, 218.)

As an initial matter, the People contend defendant's appellate claim is forfeited because it was not raised below.  We reject this argument.  Because defendant challenges the instruction on the ground that it misstated the intent element of the offense, he was not required to raise the issue at trial, and we review his claim on the merits.  (See *People v. Hudson* (2006) 38 Cal.4th 1002, 1011-1012; see also *People v. Mason* (2013) 218 Cal.App.4th 818, 823 ["Instructional error as to the elements of an offense is not waived by trial counsel's failure to object."].)

By telling the jury "you *may* find the defendant not guilty if you find that the defendant's failure to register [the Kilkenny address] as a residence was not intentional, but rather the result of misinformation or lack of transportation," the instruction could be read as if a finding of not guilty was optional if defendant failed to register because he was misinformed or lacked the transportation.  Courts are required to give "correct instruction regarding the intent necessary to commit the offense and the union between that intent and the defendant's act or conduct."  (*People v. Alvarado* (2005) 125 Cal.App.4th 1179, 1185.)  Here, the modified instruction went to the key element of the crime disputed in this case -- defendant's intent.  Accordingly, we conclude that the court erred in giving the second paragraph in the modified CALCRIM No. 3404 instruction.

### B.  Harmless Error

While we do find error in this case, we conclude the error was harmless.  Instructional error that relieves the prosecution of the burden of proving beyond a reasonable doubt each element of the charged offense or improperly describes an element of an offense is subject to harmless error review under the *Chapman v. California* (1967) 386 U.S. 18, 24 [17 L.Ed.2d 705] (*Chapman*), beyond a reasonable doubt standard for assessing prejudice.  (*People v. Flood* (1998) 18 Cal.4th 470, 502-503.)  That inquiry requires us to ask "whether it appears 'beyond a reasonable doubt that the error

8

complained of did not contribute to the verdict obtained.' [Citation.]" (*Yates v. Evatt* (1991) 500 U.S. 391, 403 [114 L.Ed.2d 432].) A reviewing court conducting a *Chapman* harmless error analysis looks to the " 'whole record' " to evaluate the error's effect on the jury's verdict. (*People v. Aranda* (2012) 55 Cal.4th 342, 367 (*Aranda*).) Looking at the record as a whole, we conclude beyond a reasonable doubt that the error here did not contribute to the verdict.

First, we look to the evidence. *Chapman* harmless error analysis related to instructional error typically includes review of the strength of the prosecution's case. (*Aranda*, *supra*, 55 Cal.4th at p. 367.) The evidence against defendant on the charged offense was overwhelming. The evidence established that defendant was sophisticated in his knowledge of the registration requirements, having registered multiple times before. In fact, defendant knew how to register as transient in the event that he did not have a more permanent residence available, since he registered as transient on April 14, 2010, and registered as transient every month thereafter through January 18, 2011. Yet at trial, Torza testified that defendant lived with her at her house on Legacy Court during this time, from April 2010 until he moved with her to the Walerga Road address on January 1, 2011. Additionally, defendant pleaded no contest in 2011 to failing to properly register as a sex offender by falsely listing the same address as his residence that he listed in this case, the Ringneck address. Thus, the evidence demonstrated that defendant failed to register his address of residence accurately during every registration since April 14, 2010, twice using the Ringneck address when, in fact, he never lived there. Moreover, the evidence showed defendant's consciousness of guilt when, after he was aware of the second investigation, he persuaded his ex-wife to put his clothes at the Ringneck address to make it appear as if he lived there. In addition to the aforementioned evidence showing defendant's intent, defendant's probation officer testified that she "clarif[ies] one on one" with each registrant what constitutes a residence, and apart from that advisement the form defendant executed expressly defined residence in a way that

9

included the Kilkenny address where defendant was residing. Furthermore, defendant did not present any persuasive evidence from which the jury could find that when registered, he was misinformed or confused about the fact he was being asked to tell them where he actually resided as opposed to an address where he did not actually reside. The evidence overwhelmingly shows that defendant knew he had a duty to register the Kilkenny address and his failure to do so was willful and not the product of misinformation.

Second, we look to the prosecution's argument to the jury. In determining whether an instructional error is harmless, we may consider the arguments of counsel. (*People v. Jennings* (2010) 50 Cal.4th 616, 676, 678; *People v. Avena* (1996) 13 Cal.4th 394, 417; *People v. Mathson* (2012) 210 Cal.App.4th 1297, 1330.) There was nothing in the prosecutor's closing arguments that would have misled the jury regarding misinformation or lack of transportation. Indeed, the prosecutor never discussed the erroneous language in the second paragraph in the modified CALCRIM No. 3404. Nor did she argue that the jury could disregard claims of misinformation or transportation difficulties or find defendant guilty even if it found that he failed to register as a result of misinformation or transportation problems.

As for lack of transportation, the prosecutor made it clear that the prosecution was not contending defendant missed a registration deadline. To the contrary, the prosecutor contended defendant showed up and registered, but he registered an address where he was not actually residing. This theory was well supported by the record.

As for the notion that defendant's failure to register the Kilkenny Drive address and his registration of the Ringneck address was based on misinformation and not intentional, the prosecutor argued defendant's conduct was intentional based on the evidence related to his past registrations and the evidence indicating he never registered where he was actually living -- with his ex-wife -- and he initialed and signed the registration forms, indicating he understood the advisements contained in those forms.

10

The prosecutor argued, "This is not an accident. This is not a mistake. It was really part of an ongoing plan that he has . . . shown through all of his registrations, and also through his contact with probation." He did not tell the truth to law enforcement. Nothing the prosecutor said could have misled the jury into believing it could find the requisite intent *even if* defendant was misinformed or lacked of transportation.

Finally, we look to the instructions as a whole instead of focusing on the erroneous paragraph in the modified CALCRIM No. 3404 in isolation. (*Jennings*, *supra*, 50 Cal.4th at p. 677 ["When an appellate court addresses a claim of jury misinstruction, it must assess the instructions as a whole, viewing the challenged instruction in context with other instructions, in order to determine if there was a reasonable likelihood the jury applied the challenged instruction in an impermissible manner."].) This is not a case where the trial court neglected to instruct the jury on an element. The court instructed the jury that "[t]he crime charged in this case requires proof of the union, or joint operation, of act and wrongful intent" and that defendant must not only "intentionally fail to do the required act, but must do so with a mental state." The jury was told that the mens rea elements of the charged offense are that defendant knew he had a duty to register the Kilkenny Drive address and that he willfully failed to register that address. It was further explained that "[s]omeone commits an act willfully when he does it willingly or on purpose." The instruction further defined "residence" as "one or more addresses where someone regularly resides, regardless of the number of days or nights spent there, such as a shelter or structure that can be located by a street address. A residence may include, but is not limited to, houses, apartment buildings, motels, hotels, homeless shelters, and recreational and other vehicles." This was the same definition of "residence" provided to defendant on the forms he initialed, a definition that can be found in the statute. (§ 290.011, subd. (g); see also *People v. Gonzales* (2010) 183 Cal.App.4th 24, 35.) And the first paragraph of the modified CALCRIM No. 3404 correctly stated, "The defendant is not guilty [of failing to register] if he acted without the mental state required for that

11

crime, but acted accidentally. You may not find the defendant guilty unless you are convinced beyond a reasonable doubt that he acted with the required mental state."

Based on the whole record before us, we conclude beyond a reasonable doubt that the trial court's failure to use the word "must" instead of "may" was harmless when it told the jury "you *may* find the defendant not guilty if you find that the defendant's failure to register [the Kilkenny address] as a residence was not intentional, but rather the result of misinformation or lack of transportation." (Italics added.)

## DISPOSITION

The judgment is affirmed.


                                                 MURRAY            , J.


We concur:


    NICHOLSON       , Acting P. J.


    BUTZ            , J.