UNITED STATES, Appellee,

v.

Staff Sergeant David F. NORMAN,
245–21–3403, United States
Army, Appellant.

ARMY 9400206.

U.S. Army Court of Criminal Appeals.

31 March 1995.

For Appellant: Captain Stanley M. Bell, JAGC (argued); Colonel Stephen D. Smith, JAGC, Captain Teresa L. Norris, JAGC (on brief); Major Roy H. Hewitt, JAGC.

For Appellee: Captain Eugene E. Baime, JAGC (argued); Colonel John M. Smith, JAGC, Major Lyle D. Jentzer, JAGC, Captain Anthony P. Nicastro, JAGC, Lieutenant Colonel Richard A. Gallivan, JAGC (on brief).

Before CUTHBERT, EDWARDS, and GONZALES, Appellate Military Judges.

## OPINION OF THE COURT

EDWARDS, Senior Judge:

Contrary to his pleas, the appellant was found guilty by a military judge sitting as a special court-martial empowered to adjudge a bad-conduct discharge of larceny in violation of Article 121, Uniform Code of Military Justice, 10 U.S.C. § 921 (1988) [hereinafter UCMJ]. The convening authority approved the adjudged sentence of a bad-conduct discharge, confinement for thirty days, and reduction to Private E1.

The appellant contends, inter alia, that the military judge erred when he refused to consider a defense motion to suppress, which was raised prior to the entry of pleas. We agree with the appellant, but find the error was harmless beyond a reasonable doubt.

### A. The Facts

Over Labor Day weekend, 1993, Staff Sergeant (SSG) Winfree had a money order in the amount of $145.00 taken from his duty desk. He discovered the loss when he returned to work after the weekend and could not locate the money order in his desk. He informed the appellant, whose duty desk is located adjacent to SSG Winfree's, that the money order was missing and the two searched SSG Winfree's desk. They did not find the money order. Staff Sergeant Winfree concluded that the money order had been stolen.

Pursuant to his own investigation, SSG Winfree obtained a copy of the original money order from his bank which had been cashed. The appellant's name had been written in on the payee line, and the appellant's signature was on the back of the money order. Staff Sergeant Winfree took the money order to Sergeant First Class (SFC) Roberts and "told him about it." Sergeant First Class Roberts was the noncommissioned officer-in-charge of the battalion's plans and operations shop and both SSG

Winfree's and the appellant's immediate supervisor. Sergeant First Class Roberts called both parties into his office and, without advising anyone of his rights pursuant to Article 31(b), UCMJ, asked the appellant about the money order. The appellant replied that he had received it from another soldier but he would not identify the individual. He then agreed to pay $145.00 and a little more to SSG Winfree.

After paying SSG Winfree, a day or two later, the appellant was called into his company commander's office. Captain (CPT) Tashiro read the appellant his Article 31(b), UCMJ, rights and the appellant rendered a written statement indicating that he received the money order from another soldier, Chad Sinkler, as payment for golf clubs that the appellant was supposed to mail to Sinkler.[1] Captain Tashiro, in advising the appellant of his rights, did not address whether or not SFC Roberts had previously advised the appellant of his rights. Captain Tashiro, independent of his inquiry into appellant's knowledge about the money order, also questioned the appellant about the over $3,000.00 in bad checks the appellant had written between 7 and 15 September 1993. As the appellant's company commander, CPT Tashiro had received these returned checks for insufficient funds from the payee, the local finance office, through normal distribution.

When the appellant was arraigned on Tuesday, 25 January 1994, at an Article 39(a), UCMJ, session, defense counsel moved in limine to suppress all pretrial statements (oral and written) made by the appellant. The defense contended that these statements had not been preceded by a proper rights warning. On Sunday, 23 January 1994, the appellant's defense counsel had submitted a written motion to suppress to the military judge and the trial counsel. Citing local court rules requiring motions to be served on opposing counsel and the trial judge at least five days prior to the hearing, the military judge asked the defense counsel to show

---

1. Chad Sinkler had ended his term of service and returned from the United States to Germany to testify at appellant's court-martial. He had been in the same battalion as appellant, but not the same battery. Mr. Sinkler denied playing golf, purchasing any golf clubs from the appellant, and giving the appellant any money order.

good cause as to why the motion should be heard.

The defense counsel informed the military judge that the government had: presented its first witness list on Wednesday, 19 January 1994 (four working days prior to trial); replied to defense's discovery request of 12 January on 19 January 1994; and, only fully complied with the disclosure rule of Military Rule of Evidence 304(d)(1) [hereinafter Mil. R.Evid.] on Friday, 21 January 1994. Moreover, it was when the defense team reviewed the 19 January 1994 disclosure that they discovered that the appellant's immediate supervisor, SFC Roberts, had questioned the appellant without a rights warning. On 19 January 1994, the defense team scheduled interviews with five potential government witnesses. Based on the interviews with four of the five witnesses, the defense team submitted the motion to suppress, on Sunday, 23 January 1994. The defense team interviewed the last potential witness, SFC Roberts, on Monday, 24 January 1994.

The government contended that the defense was, throughout the course of the case, on oral notice about the identity of the government's witnesses. Furthermore, the defense was aware of the questioning performed by the appellant's supervisors because the information was included in the victim's sworn statement which had been provided to the defense in the original preferral package sometime around mid-December.

The defense counsel believed she established the required good cause. In addition, she specifically cited *United States v. Williams*, 23 M.J. 362 (C.M.A.1987), for the proposition that the particular five-day rule was invalid, arguing that the case was right on point and prohibited local court rules from encumbering procedures established by the President. Finally, the defense counsel pointed out that all the necessary witnesses were available to testify on the motion and there was little or no prejudice to the government to proceed on the motion.

The military judge ruled that he would not hear the motion and stated that counsel had not complied with the notice requirement of the local court rules, nor established the necessary good cause required to grant an exception. He also indicated that he could distinguish the *Williams* case based on "semantics" and acknowledged that this issue would be raised on appeal either to establish that the defense counsel had been ineffective, or, that he had erred in refusing to hear the motion.[2]

### B. The Law

■ The defense motion to suppress was made prior to the submission of a plea. We find that both the trial counsel and the defense counsel complied with Mil.R.Evid. 304. Specifically, the trial counsel made the disclosure required by Mil.R.Evid. 304(d)(1), and the defense counsel moved to suppress the disclosed statements in accord with Mil. R.Evid. 304(d)(2)(a). And, the military judge's imposition of a duty to file a motion at an earlier time was in conflict with the Manual for Courts–Martial and invalid. *United States v. Williams*, 23 M.J. at 366.

Local rules of court do serve laudable objectives, but they cannot establish additional requirements that override rules prescribed by the President in the Manual for Courts–Martial. *Id.; see also United States v. Summerset*, 37 M.J. 695 (A.C.M.R.1993) (plain error for military judge to deny accused's request for trial with enlisted members made four days prior to trial which violated the local court rule five-day notice requirement); *United States v. Walker*, 25 M.J. 713 (A.C.M.R.1987) (military judge abused his discretion when he imposed a narrower notice requirement on defense counsel with respect to calling of defense expert than required by plain language of Rule for Court–Martial 701(b)(2)); *United States v. Webster*, 24 M.J. 96 (C.M.A.1987) (military judge abused his discretion when he denied accused's request for trial by judge alone as untimely when request was made before assembly, but on day of scheduled trial).

---

2. This acknowledgment brings many thoughts to mind about the judge's role in the administration of a judicial system. We will not become sidetracked here in deciding the issues raised before us. In passing, we note two things. First, a judge should resolve issues, and not create them knowingly. Second, a judge encourages respect for the law by following the law.

In this case, we find that the military judge erred in refusing to hear the appellant's motion to suppress. For purposes of our analysis, we will assume that the result of this error was to place before the court inadmissible evidence in the form of the statements made by the appellant, and evidence derived from those statements, in other words, the fruit of the poisonous tree.

## C. Analysis

A "trial error" is error which occurs during presentation of a case to the jury and may therefore be quantitatively assessed in context of other evidence presented in order to determine whether its admission was harmless beyond a reasonable doubt. Admission of an involuntary confession is subject to a harmless error analysis. *Arizona v. Fulminante*, 499 U.S. 279, 111 S.Ct. 1246, 113 L.Ed.2d 302 (1991).[3]

We note that the "harmless error" analysis is particularly appropriate when the statement is more in the nature of an admission than a full confession. *United States v. Jones*, 34 M.J. 899, 909 (N.M.C.M.R.1992). In this case an inadmissible confession was not placed before the court. Moreover, the appellant's statements did not consist of isolated aspects of the crime. Rather, the appellant made some potentially exculpatory statements that the government chose to match up against other evidence in an attempt to establish that the statements were untrue. *See Arizona v. Fulminante*, 499 U.S. at 296, 111 S.Ct. at 1258.

In order for us to affirm, the government must establish guilt by evidence independently and freely secured and that the inadmissible confession did not contribute to the conviction. *Id.* at 296, 111 S.Ct. at 1257. To say that an error did not "contribute" to the ensuing verdict is not, of course, to say that the jury was totally unaware of that feature of the trial later held to have been erroneous. It is, rather, to find that the error was unimportant in relation to everything else the jury considered on the issue in question, as revealed in the record. *Yates v. Evatt*, 500 U.S. 391, 403, 111 S.Ct. 1884, 1893, 114 L.Ed.2d 432 (1991). Therefore, we must ask what evidence the jury actually considered in reaching its verdict. If, for example, the excluded evidence is necessary to support the verdict, a reviewing court must ask what evidence the jury considered as tending to prove or disprove that fact. Did the jury look at only this evidence, or did it consider other evidence bearing on the fact subject to the excluded evidence? In answering the question, a court does not conduct a subjective inquiry into the jurors' minds. The answer must come, instead, from an analysis of the evidence presented to the jurors. *Id.*

Therefore, assuming that the defense's motion to suppress would have been granted in full and ignoring all evidence that is the fruit of that poisonous tree, we find, using our unique Article 66(c) fact-finding powers, that the remaining evidence is far more than sufficient to support the appellant's conviction beyond a reasonable doubt.

This remaining evidence is the only evidence we have considered and it can be fairly summarized as follows: (1) the victim's testimony, which details his purchase of the money order, his storage of the money order in his desk (located adjacent to the appellant's) over the Labor Day weekend, his subsequent search (with the appellant's assistance) after the weekend to locate the missing money order, and his personal investigation in which he obtained a copy of the money order from his bank which had been cashed; (2) the money order bearing the appellant's name written in on the "payable to" line and what we find to be appellant's signature on the back of the money order; (3) evidence of the appellant's motive derived from his over $3,000.00 in bad checks written between 7 and 15 September 1993; (4) evidence of knowledge and opportunity, the appellant's

---

3. In applying harmless-error analysis to many different constitutional violations, the Supreme Court has been faithful to the belief that the harmless-error doctrine is essential to preserve the principle that the central purpose of a criminal trial is to decide the factual question of the defendant's guilt or innocence, and promotes public respect for the criminal process by focusing on the underlying fairness of the trial rather than on the virtually inevitable presence of immaterial error. *Arizona v. Fulminante*, 499 U.S. 279, 308, 111 S.Ct. 1246, 1264, 113 L.Ed.2d 302 (1991) (Rehnquist, C.J., concurring).

desk was located adjacent to the victim's and he had access to the battalion's plans and operations shop; and finally, (5) comparing the signatures of the appellant as they appear on the numerous checks he wrote which were returned for insufficient funds (admitted to establish motive) to the signature on the money order they clearly appear to be made by the same person—the appellant.

### D. Conclusion

An otherwise valid conviction should not be set aside if the reviewing court may confidently say, on the whole record, that the constitutional error was harmless beyond a reasonable doubt. *Yates v. Evatt,* 500 U.S. 391, 405, 111 S.Ct. 1884, 1894, 114 L.Ed.2d 432 (1991). We find that the appellant's conviction is factually supported by the remaining evidence in the record of trial. We hold that the military judge's refusal to hear appellant's motion to suppress was harmless error beyond a reasonable doubt.

We have also carefully considered the remaining assignments of error, to include those matters personally raised by the appellant pursuant to *United States v. Grostefon,* 12 M.J. 431 (C.M.A.1982). Issue I is resolved against the appellant; Issue III is mooted by our finding that the military judge erred by refusing to hear a defense motion to suppress (Issue II); and the matters personally asserted by the appellant are without merit.

The findings of guilty and the sentence are affirmed.

Chief Judge CUTHBERT and Judge GONZALES concur.