Filed 6/28/16  P. v. Marta CA4/3

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>        v.<br><br>CESAR GERARDO MARTA,<br><br>    Defendant and Appellant. | G050716<br><br>(Super. Ct. No. 10CF2948)<br><br>O P I N I O N |

Appeal from a judgment of the Superior Court of Orange County, Thomas M. Goethals, Judge.  Affirmed.

Mark Alan Hart, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Gerald A. Engler, Chief Assistant Attorney General, Julie L. Garland, Assistant Attorney General, Charles C. Ragland, Scott C. Taylor and Kathryn Kirschbaum, Deputy Attorneys General, for Plaintiff and Respondent.

\*          \*          \*

## INTRODUCTION

A jury convicted Cesar Gerardo Marta of the second degree murder of Cesar Daniel Hernandez-Gutierrez (Gutierrez) and acquitted Marta of first degree murder. (Pen. Code, §§ 187, 189.) The trial court found true the allegations that Marta had previously been convicted of a serious felony (*id.*, § 667, subd. (a)(1)) and had been convicted of a serious and violent felony (*id.*, §§ 667, subds. (d) & (e)(1), 1170.12, subds. (b) & (c)). The court struck the prior serious and violent felony conviction for purposes of sentencing and sentenced Marta to a term of 20 years to life in prison.

The one claim of error asserted by Marta is the trial court should have granted his motion for a mistrial. Marta's motion for a mistrial was based on the court's decision to admit for a limited purpose, and later to strike, testimony from a witness that, on the evening of the murder, Marta's nephew stated, "we're going to go to [the victim's] house and F him up." We conclude the trial court did not err by denying the motion for a mistrial and therefore affirm.

## FACTS

Marta was married to Ysidra Cano as of the time of trial. They have two daughters: Vanessa and Ruby. Vanessa suffers from mental illness. Marta was estranged from Cano and lived in Nebraska.

Marta returned to California in May 2010 to visit Vanessa. He drove to California in a green Chevrolet van with Nebraska license plates. On May 26, Marta went to Cano's house to see Vanessa. During the visit, Vanessa told Marta that Gutierrez had hit her. Later, Marta asked Joe Contreras, who was talking with Ruby, if Gutierrez "still lived at the same place." Contreras knew Gutierrez, but did not know the answer to Marta's question. A few hours later, Marta left in his van with his sister, his nephew Jonathan Bautista (Bautista), and Vanessa.

2

At about 10:00 p.m. on May 26, 2010, Gutierrez was outside of his home in Santa Ana. Others present were Gutierrez's brothers, Mark Gutierrez and Ernesto Gutierrez, Mark Gutierrez's girlfriend, and Ernesto Gutierrez's brother-in-law. Two men walked toward Gutierrez. The two men walked past Gutierrez, then walked back and approached him. One man had a knife.[1] The other man, later identified as Marta, asked Gutierrez, "are you Danny?" Gutierrez responded, "yeah. Do I know you?" Marta said, "this is for my little girl," and started punching Gutierrez in the face and backed him into a corner of a house.

Gutierrez was knocked to the ground. When he got up and tried to run away, the other man joined Marta in the assault. The man with the knife waved it at Ernesto Gutierrez and his brother-in-law to prevent them from helping Gutierrez. As Marta kicked, hit, and punched Gutierrez, the man with the knife stabbed Gutierrez seven times. Marta and the other man ran to a van and drove off. The van did not have California license plates.

Gutierrez died of multiple stab wounds from a single-edged knife of five to seven and a half inches in length.

## DISCUSSION

## I.

## Background

Before trial, the prosecution sought permission to have Contreras testify that on the evening of May 26, 2010, Bautista said, "we're going to Danny's house." The prosecution argued the statement was admissible as circumstantial evidence that Marta and Bautista had the same mental state of an intent to go to Gutierrez's home. The prosecution also argued the statement was admissible under Evidence Code section 1223

---

[1] The defense argued this man was Marta's nephew, Bautista.

3

as a statement by a coconspirator.  The trial court ruled the statement was inadmissible without further evidence that Marta heard the statement or that a conspiracy existed at the time the statement was made.

Contreras testified at trial as both a prosecution witness and a defense witness.  During the prosecution's case-in-chief, Contreras testified that Vanessa told Marta that Gutierrez had hit her.  When Vanessa told this to Marta, he asked Contreras whether that was true and if he knew whether Gutierrez lived at the same address.  Contreras testified that a few hours later, Marta left in a van with his sister and Bautista.

Contreras was also called as a defense witness.  Defense counsel asked Contreras whether Bautista "interact[ed]" with Gutierrez and whether Bautista knew where Gutierrez lived.

On cross-examination, the prosecutor asked Contreras, "[w]hat did [Bautista] say to you about where [Gutierrez] lives?"  Defense counsel made a hearsay objection.  The trial court overruled the objection on the ground the question "goes to state of mind."  The court explained the hearsay rule to the jurors and told them the answer would be admitted not to prove the truth of the fact asserted but "the fact that somebody heard the statement or has an opinion about it may have caused the hearer to do something."

The following exchange then occurred:

"Q.  By [the prosecutor]:  What did Jonathan [Bautista] say to you about Danny's house on the last—on that Wednesday when they came to pick up defendant?

"A.  [(Contreras):]  With the bad word or without it?

"The Court:  Tell us what you heard because we are adults here.

"The Witness [(Contreras)]:  Okay.  He said, 'we're going to go to his house and F him up.'"

Later, during a discussion on jury instructions, defense counsel renewed his earlier objection to Contreras's testimony and moved for a mistrial.  Defense counsel

4

argued that Contreras's state of mind was irrelevant and no evidence had been introduced to show that Marta had heard Bautista's statement. The prosecutor conceded there was no evidence that Marta was within earshot of Bautista when he made the statement about going to Gutierrez's house. The prosecutor argued that, because defense counsel had asked Contreras about whether Bautista knew where Gutierrez lived, the prosecutor could ask Contreras how he knew that information. Bautista's statement about going to Gutierrez's house was relevant, the prosecutor argued, to show how Contreras knew that Bautista knew where Gutierrez lived.

The court tentatively ruled that the prosecutor's question was proper but that Contreras's answer should be stricken as nonresponsive. The court stated it would review the transcript and continue to think about the issue over the weekend before making a final ruling.

On the following Monday, the trial court struck Contreras's testimony about what Bautista said and denied the defense motion for a mistrial. At the request of defense counsel, the trial court agreed to admonish the jury. The court admonished the jury to forget that it heard Contreras testify, "[h]e said, '[w]e're going to go to his house and "F" him up.'" The court continued: "Forget you heard it. You cannot think about it, talk about it, or consider it as evidence during your deliberations. And the lawyers aren't going to talk about it, because it's no longer a piece of evidence that is fair game for discussion or consideration. [¶] . . . So I hate to tell you what it is again, because now it's fresh in your memory, but it is a reminder, and you now have to strike that from your notes, in effect. Strike that from your memory banks, in effect. And if it comes up in the jury room, if somebody does mention it, the rest of you have to say, '[w]ait a minute, the [j]udge struck that. We can't talk about it, think about it, consider it as any sort of evidence.' All right. Everybody with me?"

When instructing the jury, the court repeated the admonishment by telling the jury, "[i]f I order[ed] testimony stricken from the record, you must disregard it and

must not consider that testimony for any purpose." The court also instructed the jury with a modified CALCRIM No. 418, regarding consideration of a coconspirator's statements.[2]

## II.

## Legal Standards: Motion for a Mistrial

A trial court's decision on a motion for a mistrial is reviewed under the abuse of discretion standard. (*People v. Collins* (2010) 49 Cal.4th 175, 198.) "'A mistrial should be granted if the court is apprised of prejudice that it judges incurable by admonition or instruction. [Citation.] Whether a particular incident is incurably prejudicial is by its nature a speculative matter, and the trial court is vested with considerable discretion in ruling on mistrial motions. [Citation.]'" (*Ibid.*) A motion for a mistrial should be granted only when a defendant's chances of receiving a fair trial have been damaged beyond repair. (*Ibid.*)

When the trial court determines that any prejudice can be cured by admonition, and the court instructs the jury to disregard the stricken testimony, the jury is assumed to have followed that instruction. (*People v. Mendoza* (2007) 42 Cal.4th 686, 703; *People v. Cox* (2003) 30 Cal.4th 916, 961, disapproved on another ground in *People v. Doolin* (2009) 45 Cal.4th 390, 421.)

---

[2] The jury was instructed, in relevant part: "In deciding whether the People have proved that the defendant committed any of the crimes charged, you may not consider any statement made out of court by Juan Bautista unless the People have proved by a preponderance of the evidence that: [¶] 1. Some evidence other than the statement itself establishes that a conspiracy to commit a crime existed when the statement was made; [¶] 2. Juan Bautista was a member of and participating in the conspiracy when he made the statement; [¶] 3. Juan Bautista made the statement in order to further the goal of the conspiracy; [¶] AND [¶] 4. The statement was made before or during the time that the defendant was participating in the conspiracy."

6

## III.

### The Trial Court Did Not Err by Denying Marta's Motion for a Mistrial.

In this case, the trial court struck Contreras's testimony that Bautista had said, "we're going to go to his house and F him up," and admonished the jury in the most thorough language imaginable. The court told the jurors not to consider, think about, or talk about the testimony, to delete the testimony from their memory banks, and to strike the testimony from their notes, and to forget they ever heard the testimony. At the end of trial, during general jury instruction, the court again told the jury to disregard the stricken testimony. We assume the jury followed the admonishment and instructions. (*People v. Mendoza*, *supra*, 42 Cal.4th at p. 703.) Although a bell cannot be unrung (*People v. Hill* (1998) 17 Cal.4th 800, 845-846), it can be assumed the jury followed an instruction to ignore the ring.

Marta argues the admonishments could not have cured any prejudice because the jury heard Contreras's testimony on Thursday but the court did not strike the testimony until the following Monday, giving the jurors a full weekend to consider the testimony. In addition, Marta argues, the trial court, by instructing the jury with CALCRIM No. 418, created at least an ambiguity as to whether the jury could consider the stricken testimony as a coconspirator's statement if the jury found the elements of a conspiracy. According to Marta, the combination of allowing the jurors to ponder the stricken testimony for four days, combined with the instruction on a coconspirator's statements, violated his rights under the Sixth and Fourteenth Amendments to the United States Constitution to "a reliable jury determination of the elements of the charge and right to place the burden upon the prosecution to prove guilt beyond a reasonable doubt with competent evidence."

We reject those arguments on two grounds. First, the trial court did not abuse its discretion by determining that an admonition to the jury would cure any

7

prejudice from the stricken testimony. Second, the stricken testimony, even if considered by the jury, was not prejudicial under the standard of *Chapman v. California* (1967) 386 U.S. 18. Under the *Chapman v. California* standard, error is harmless when it appears "beyond a reasonable doubt that the error complained of did not contribute to the verdict obtained." (*Id.* at p. 24.) "'To say that an error did not contribute to the ensuing verdict is . . . to find that error unimportant in relation to everything else the jury considered on the issue in question, as revealed in the record.'" (*People v. Neal* (2003) 31 Cal.4th 63, 86, quoting *Yates v. Evatt* (1991) 500 U.S. 391, 403.)

The stricken testimony was consistent with—and arguably supported— Marta's theory of defense presented at trial. Contreras testified he heard Bautista say, "we're going to go to [Gutierrez's] house and F him up." The evidence was overwhelming, and Marta agrees, that he was one of the two men who went to Gutierrez's house on the night of May 26, 2010. Thus, the statement that Bautista and Marta were going to Gutierrez's home did not tell the jurors anything they would not have found in the absence of the statement. The statement that Bautista and Marta were going to "F [Gutierrez] up" conveyed the intent to beat up Gutierrez or hurt him, not to kill him. That was very nearly Marta's theory of defense. In closing argument, Marta's counsel argued that Marta confronted Gutierrez with the intent of getting into "a good old-fashioned fist fight" and land "[a] couple of punches, just to make sure it settles in." Marta "followed the old-fashioned rules of fighting, with your fists, no weapons, because he was brought up to take care of [his] family."

Thus, if the jury ignored the admonition, or for any other reason considered the stricken testimony, we conclude beyond a reasonable doubt the stricken testimony did not contribute to the verdict.

**DISPOSITION**

The judgment is affirmed.


FYBEL, J.

WE CONCUR:


O'LEARY, P. J.


IKOLA, J.