# IN THE COURT OF APPEALS OF THE STATE OF IDAHO

## Docket No. 47773

STATE OF IDAHO,

    Plaintiff-Respondent,

v.

CHRISTOPHER HUGH TUBBS,

    Defendant-Appellant.

)
)
)
)
)
)
)
)
)
)
)
)

Filed: August 31, 2021

Melanie Gagnepain, Clerk

THIS IS AN UNPUBLISHED
OPINION AND SHALL NOT
BE CITED AS AUTHORITY

---

Appeal from the District Court of the Fourth Judicial District, State of Idaho, Ada County. Hon. Deborah A. Bail, District Judge.

Judgment of conviction for four counts of lewd conduct with a minor child under sixteen and five counts of sexual abuse of a child under the age of sixteen, affirmed.

Eric D. Fredericksen, State Appellate Public Defender; Brian R. Dickson, Deputy Appellate Public Defender, Boise, for appellant.

Hon. Lawrence G. Wasden, Attorney General; Mark W. Olson, Deputy Attorney General, Boise, for respondent.

---

GRATTON, Judge

Christopher Hugh Tubbs appeals from the judgment of conviction entered upon a jury's verdict finding him guilty of four counts of lewd conduct with a minor child under sixteen and five counts of sexual abuse of a child under the age of sixteen. Tubbs argues that the district court abused its discretion by excluding the late-disclosed witnesses Tubbs identified on an amended witness list submitted four days prior to trial. For the reasons set forth below, we affirm.

## I.

## FACTUAL AND PROCEDURAL BACKGROUND

Tubbs was indicted on four counts of lewd conduct with a minor child under sixteen, Idaho Code § 18-1508, and five counts of sexual abuse of a child under the age of sixteen, I.C.

1

§ 18-1506, after his daughter, H.T., disclosed to authorities that Tubbs had sexually abused her over the course of seven years. H.T. asserted that the abuse occurred continuously from the age of five to the age of twelve, when she told Tubbs to stop. The abuse occurred at various locations, including Tubbs' place of work, and at different times of day, including during school hours if she and Tubbs were home alone.

On the Friday before the trial set for Tuesday, which was after the discovery deadline, Tubbs disclosed an amended witness list containing several witnesses who had not been previously disclosed, including two former employees of the company where Tubbs worked for three of the seven years in question. The morning of the jury trial, the State moved to exclude the late-disclosed witnesses on the basis that they were not disclosed prior to the discovery deadline. Tubbs explained that there was difficulty in tracking down these witnesses, as the company had since dissolved. Tubbs further stated that the prosecutor had been made "well aware" that the defense was attempting to track down these witnesses. Tubbs asserted that the late-disclosed witnesses were important to his case because they would testify concerning Tubbs' behavior at work and could also testify that he never took sick days, thereby impeaching H.T.'s expected testimony that the abuse occurred at work and at home during school hours. The district court granted the State's motion to exclude the late-disclosed witnesses, finding that the limited relevance of the proffered testimony did not outweigh the discovery violation.

The jury found Tubbs guilty of all charges. Tubbs timely appeals.

## II.

## STANDARD OF REVIEW

Whether to impose a sanction for a discovery violation, and the choice of an appropriate sanction, are within the discretion of the trial court. *State v. Huntsman*, 146 Idaho 580, 586, 199 P.3d 155, 161 (Ct. App. 2008). When a trial court's discretionary decision is reviewed on appeal, the appellate court conducts a multi-tiered inquiry to determine whether the trial court: (1) correctly perceived the issue as one of discretion; (2) acted within the boundaries of such discretion; (3) acted consistently with any legal standards applicable to the specific choices before it; and (4) reached its decision by an exercise of reason. *State v. Herrera*, 164 Idaho 261, 270, 429 P.3d 149, 158 (2018).

## III.

## ANALYSIS

Tubbs argues that the district court abused its discretion by preventing him from presenting the testimony of two late-disclosed witnesses. Specifically, Tubbs argues that the district court failed to conduct the appropriate test weighing his right to a fair trial against the prejudice to the State when considering whether to allow the late-disclosed witnesses, and failed to consider alternative sanctions. We affirm the district court's decision since, even assuming the district court erred by not performing the requisite analysis, any error was harmless.[1]

Error is not reversible unless it is prejudicial. *State v. Stell*, 162 Idaho 827, 830, 405 P.3d 612, 615 (Ct. App. 2017). Where a criminal defendant shows an error based on a contemporaneously objected-to, nonconstitutional violation, the State then has the burden of demonstrating to the appellate court beyond a reasonable doubt the error did not contribute to the jury's verdict. *State v. Montgomery*, 163 Idaho 40, 46, 408 P.3d 38, 44 (2017). Thus, we examine whether the alleged error complained of in the present case was harmless. *See id.* "Harmless error is 'error unimportant in relation to everything else the jury considered on the issue in question, as revealed in the record.'" *State v. Garcia*, 166 Idaho 661, 674, 462 P.3d 1125, 1138 (2020) (quoting *Yates v. Evatt*, 500 U.S. 391, 403 (1991)). This standard requires weighing the probative force of the record as a whole while excluding the erroneous evidence and at the same time comparing it against the probative force of the error. *Id.* If the error's effect is minimal compared to the probative force of the record establishing guilt beyond a reasonable doubt without the error, then the error did not contribute to the verdict rendered and is harmless. *Id.* The reviewing court must take into account what effect the error had, or reasonably may have had, on the jury in the context of the total setting and in relation to all else

---

[1]   In doing so, we do not necessarily agree with Tubbs' arguments regarding error in the district court's ruling. Contrary to Tubbs' assertion that the district court failed to recognize relevance in the testimony, in context, the district court simply recognized the very minimal relevance of the proposed testimony. Given the low exculpatory value of the testimony and the failure to specifically relate it to any of the abuse incidents, the district court also recognized the inherent prejudice in the late disclosure of witnesses to an opposing party. Finally, although the district court granted the State's motion to exclude the witnesses, the district court offered an alternative to the sanction by providing that the State could interview the witnesses and, if Tubbs could later demonstrate a need for the testimony, the district court indicated it would reconsider its decision. During trial, Tubbs did not renew his request to call the late-disclosed witnesses.

that happened, which necessarily includes the evidence presented. *Kotteakos v. United States*, 328 U.S. 750, 764 (1946).

Prior to trial, Tubbs argued that his purpose in presenting the testimony of the late-disclosed witnesses was to contradict any testimony by H.T. that the sexual abuse occurred at Tubbs' place of work and at home during school hours. Tubbs asserted the testimony of the late-disclosed witnesses would show that Tubbs worked during normal hours and never took sick days, thereby contradicting H.T.'s testimony that Tubbs abused her during school hours. Tubbs also stated that the late-disclosed witnesses could generally address the allegations that some of the abuse occurred at Tubbs' workplace, but conceded, given that H.T. was not clear on specific dates or times, the testimony would be limited as to those allegations.

Granting full weight to the excluded witnesses' testimony as portrayed by Tubbs, the district court's decision to exclude this testimony was harmless because the probative force of the error was extremely minimal compared to the probative force of the record as a whole. Turning first to the contradiction of H.T.'s testimony that the abuse occurred during school hours, Tubbs' proffered testimony would have little impeachment value because there is very little, if any, contradiction between H.T.'s testimony and the excluded witnesses' testimony. H.T. testified that the abuse occurred at varied times and places, which included school hours, over the course of seven years. The excluded witnesses' testimony proffered by Tubbs would at best state, for the three years that Tubbs worked with the witnesses, he was not home at all during school hours. Even accepting the somewhat dubious assertion that Tubbs never took a sick day and was never home during the week for the entire three-year period, despite a separate witness testifying that he worked Saturdays and had a day off in the middle of the week, this only covers three of the seven years over which H.T. alleged that abuse occurred. Therefore, both testimonies could simultaneously be true, severely limiting the impeachment value of the excluded testimony. The probative value of the late-disclosed witnesses' testimony in this regard is, therefore, very minimal.

As to the contradiction of H.T.'s testimony that some of the abuse occurred at work, Tubbs conceded that the testimony would be limited and therefore have little probative value. This is again due to the fact that H.T.'s testimony was not clear on specific dates or times, but covered many different locations over a seven-year period. Further, assuming that the late-disclosed witnesses' testimony would have indicated that Tubbs was never seen acting

4

inappropriately with his daughter while at the office,[2] this would also not contradict H.T.'s testimony that she was, unsurprisingly, abused at the workplace where others could not see. Therefore, the probative value of the testimony in this regard is, likewise, minimal.

Finally, weighing the probative value of the error in excluding the witnesses' testimony against the probative value of the record as a whole without the error, the error is harmless. The evidence in the record includes H.T.'s detailed and consistent testimony of the abuse, and a confrontation call during which Tubbs responds to H.T.'s question as to why he sexually abused her by stating he did so because she "liked it" and "asked" for it. Weighing the limited probative value of the error against the record as a whole without the error, the error was harmless beyond a reasonable doubt.

## IV.
## CONCLUSION

Assuming the district court erred by failing to perform the requisite prejudice analysis and consider alternative sanctions prior to excluding Tubbs' late-disclosed witnesses, any error was harmless. Therefore, we affirm Tubbs' judgment of conviction for four counts of lewd conduct with a minor child under sixteen and five counts of sexual abuse of a child under the age of sixteen.

Judge LORELLO and Judge BRAILSFORD **CONCUR**.

---

[2] Tubbs did not state prior to trial exactly what the witness testimony would say regarding the allegations that some of the abuse occurred at the workplace.

5