**IN THE COURT OF APPEALS OF THE STATE OF IDAHO**

**Docket Nos. 48089/48090**

| | |
|---|---|
| STATE OF IDAHO, | ) |
| | ) **Filed: November 17, 2021** |
| Plaintiff-Respondent, | ) |
| | ) **Melanie Gagnepain, Clerk** |
| v. | ) |
| | ) **THIS IS AN UNPUBLISHED** |
| SHEENAGH ELIZABETH ADAMS, | ) **OPINION AND SHALL NOT** |
| | ) **BE CITED AS AUTHORITY** |
| Defendant-Appellant. | ) |
| | ) |

Appeal from the District Court of the First Judicial District, State of Idaho, Bonner County. Hon. Barbara A. Buchanan, District Judge.

Judgments of conviction and sentences for felony injury to a child and harboring a felon, <u>affirmed</u>.

Eric D. Fredericksen, State Appellate Public Defender; Ben P. McGreevy, Deputy Appellate Public Defender, Boise, for appellant.

Hon. Lawrence G. Wasden, Attorney General; John C. McKinney, Deputy Attorney General, Boise, for respondent.

_____

GRATTON, Judge

In these consolidated cases, Sheenagh Elizabeth Adams appeals from the judgments of conviction entered upon her guilty pleas to felony injury to a child and harboring a felon. Adams argues that the district court abused its discretion when it quashed the subpoena for J.L.A. to testify at Adams' sentencing hearing and excluded J.L.A.'s testimony. For the reasons set forth below, we affirm.

**I.**

**FACTUAL AND PROCEDURAL BACKGROUND**

This case arose after Adams met and became engaged to William Wegner. After Wegner and Adams moved with Adams' two children to a cabin near Priest Lake, officers began investigating Wegner due to a report that he had molested a five-year-old child in the area. The officers learned that Wegner slept in the same bed as J.L.A., Adams' teenage daughter, while she

1

was wearing little or no clothing. Wegner would also touch J.L.A.'s breast and buttocks, take showers with her, let her suck his toes, and wipe her vagina. Adams admitted she was aware of some of these actions by Wegner.

The Idaho Department of Health and Welfare (the Department) took both of Adams' children into shelter care. Once in shelter care, the Department caseworkers began to suspect that J.L.A. was pregnant and asked her to provide a urine sample. Adams accompanied J.L.A. when she provided the urine sample and substituted her own urine in place of J.L.A.'s. A blood test later confirmed that J.L.A. was pregnant.

Adams was charged by indictment with injury to a child and two counts of accessory to lewd conduct with a minor child. Adams entered an *Alford*[1] plea to felony injury to a child and the remaining charges were dismissed. The felony injury to child charge to which Adams pled guilty alleged, in relevant part, that Adams

> under circumstances likely to produce great bodily harm or death and while having care and/or custody of the child, did willfully cause or permit the child to be placed in a situation endangering her health or person, to wit: J.L.A., a child under the age of eighteen, to wit: of the age of fourteen, by placing the child in a position where she was raped by William Scott Wegner.

Adams was also charged in a separate case with harboring a felon and compounding a crime to hinder prosecution after she harbored Wegner for a period of approximately five months. Adams pled guilty to the harboring a felon charge and the compounding charge was dismissed.

Both cases were consolidated for sentencing. Before the sentencing hearing, Adams served J.L.A. with a subpoena to testify in order to rebut the State's argument in its sentencing memorandum that Adams was aware of Wegner's abuse of J.L.A. and that they intended to use J.L.A. as a surrogate, since Adams could no longer have children. The State filed a motion to quash the subpoena, or in the alternative to exclude J.L.A.'s testimony. The State's motion included a letter from a licensed therapist explaining that she had worked with J.L.A. for over a year and that forcing J.L.A. to testify at the hearing would do further damage to her mental health. Adams objected to the motion, arguing that J.L.A.'s testimony was necessary. The district court granted the motion and quashed the subpoena and excluded J.L.A.'s testimony from the sentencing hearing.

---

[1]     *See North Carolina v. Alford*, 400 U.S. 25 (1970).

Adams was sentenced to consecutive unified sentences of six years with three years determinate for felony injury to a child, and five years with three years determinate for harboring a felon. Adams timely appealed, and the two cases were consolidated.

## II.

## ANALYSIS

Adams argues that the district court abused its discretion when it quashed the subpoena for J.L.A. and excluded her testimony at the sentencing hearing. Specifically, Adams contends that the district court did not act consistently with the applicable legal standards in concluding that it did not believe it was "appropriate that a victim could be subpoenaed to testify." Further, Adams argues that the State's grounds for quashing the subpoena under Idaho Criminal Rule 17(b) and Idaho Rule of Civil Procedure 45(d)(1) did not justify exclusion of J.L.A.'s testimony. The State refutes each of Adams' arguments and, alternatively, contends any error was harmless. We decline to address whether the district court abused its discretion by granting the State's motion to quash the subpoena[2] or by precluding live testimony from J.L.A. because any error was harmless.

Error is not reversible unless it is prejudicial. *State v. Stell*, 162 Idaho 827, 830, 405 P.3d 612, 615 (Ct. App. 2017). Where a criminal defendant shows an error based on a contemporaneously objected-to, nonconstitutional violation, the State then has the burden of demonstrating to the appellate court beyond a reasonable doubt the error did not contribute to the jury's verdict. *State v. Montgomery*, 163 Idaho 40, 46, 408 P.3d 38, 44 (2017). Thus, we examine whether the alleged error complained of in the present case was harmless. *See id.* "Harmless error is 'error unimportant in relation to everything else the jury considered on the issue in question, as

---

[2]  The parties dispute whether the district court quashed the subpoena based, at least in part, on a perceived rule that Idaho Code § 19-5306 and Article I, § 22 of the Idaho Constitution prohibits subpoenaing a victim. We note that the State argued in its motion that J.L.A. "is protected from being forced to testify at the sentencing hearing" by both the victim's right statute and the related constitutional provision. This assertion is incorrect. Nothing in either the statute or the Idaho Constitution forecloses a defendant's ability to issue a subpoena to a victim, whether for trial, sentencing, or some other proceeding related to a criminal case at which witness testimony is presented. Indeed, such a rule would implicate the defendant's Sixth Amendment right to compulsory process. *See Taylor v. Illinois*, 484 U.S. 400, 408-09 (1988) (explaining Sixth Amendment right to compel a witness's presence in the courtroom). While a subpoena may be quashed in accordance with court rules or evidence sought pursuant to the subpoena may ultimately be excluded, the *ability* to subpoena a victim is not impaired by I.C. § 19-5306 or Article I, § 22 of the Idaho Constitution.

revealed in the record.'" *State v. Garcia*, 166 Idaho 661, 674, 462 P.3d 1125, 1138 (2020) (quoting *Yates v. Evatt*, 500 U.S. 391, 403 (1991)). If the error's effect is minimal compared to the probative force of the record establishing guilt beyond a reasonable doubt without the error, then the error did not contribute to the decision rendered and is harmless. *Id.*

Adams' request to elicit live testimony from J.L.A. was to counter the State's anticipated argument at the sentencing hearing that Adams was aware of Wegner's sexual abuse of J.L.A. Adams argues that, without J.L.A.'s testimony, she was unable to present evidence that she was unaware of Wegner's sexual abuse and that J.L.A. and Wegner had attempted to hide it from her. However, J.L.A. testified at the grand jury hearing that Adams had asked her and Wegner multiple times whether something was going on between them, which they both denied. J.L.A. also testified about her and Wegner's plan to avoid being caught by Adams. This testimony was admitted as an exhibit at sentencing and was considered by the district court. Thus, the testimony that Adams wanted to elicit from J.L.A. at the sentencing hearing was provided to the court through the grand jury transcript. Therefore, any error in the exclusion of live testimony of J.L.A. regarding the same information in the grand jury transcript was harmless because the district court considered the same information through other means.

## III.
## CONCLUSION

Any error in quashing the subpoena or in the exclusion of live testimony from J.L.A. at the sentencing hearing was harmless. Accordingly, we affirm Adams' judgments of conviction and sentences for felony injury to child and harboring a felon.

Chief Judge HUSKEY and Judge LORELLO **CONCUR**.

4